## In re ROGERS PALACE LAUNDRY CO.

### TAAFFE v. CENTRAL TRUST CO. OF ILLINOIS.

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921.)

No. 2878.

1. Bankruptcy ⇐=184(2)—Subrogation ⇐=23(3)—Person, lending money used in canceling bonds, held an unsecured creditor.

Where one advanced money to a bankrupt, to be used in payment of mortgage bonds, and such bonds and interest were paid, and he accepted for security a larger amount of bonds represented by a new bond issue, and took no assignment of the first mortgage bonds, and did not agree with bankrupt that he would have a lien similar to the lien of the holders of the canceled bonds, and did not record the new trust deed, he was an unsecured creditor, and was not entitled to subrogation.

2. Subrogation ⇐=35—Must rest on agreement.

A conventional subrogation must rest on an agreement, express or implied, and this agreement must be to the effect that the payor shall have the same priority as the holder of the security and be substituted for him, and the payor is not entitled to subrogation if he accepts other and different security.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of the Rogers Palace Laundry Company, bankrupt. Matthew Taaffe, executor of the estate of Edwin Henning, deceased, sought a lien on funds in the possession of the Central Trust Company of Illinois, trustee of the bankrupt estate. From a decree denying lien, the executor appeals. Affirmed.

Appellant sought, but was denied, a lien to the extent of $3,384 and interest upon funds in appellee's possession realized from the sale of bankrupt's property, and which realization was, by order of the court, made subject to any lien found to exist against the property. Briefly stated, it appeared that bankrupt, while a going concern, executed its deed to secure an indebtedness of $60,000, payable, with interest, in installments. Unable to meet its maturing obligations, and representing that a larger capital was essential to the successful conduct of its business, its representative sought financial assistance from one Edward Henning, then in California for his health. A plan was discussed for financing the company, which called for the issue of bonds to the extent of $80,000, the proceeds to be used in refunding the outstanding mortgage and in paying other outstanding and unsecured obligations.

Henning at the time loaned bankrupt $3,384, a sum sufficient to pay interest coupons and six bonds of $300 each, then due, leaving a balance on the first mortgage indebtedness of $51,000. Henning's loan was represented by a promissory note and was to be secured by bonds of the new issue. Bankrupt paid to the holders of the first mortgage bonds the amount thus received, and the first mortgage indebtedness was thereupon reduced to $51,000. The trust deed for $80,000 was duly executed and delivered to Henning, who received and held $29,000 of the bonds to secure his loan of $3,384. Henning during his life, and the executor after his death, neglected to record the mortgage. It was the plan of bankrupt and Henning to sell these $29,000 of bonds and pay Henning

and unsecured creditors, and it was further planned to sell the remaining $51,000 of bonds to satisfy the outstanding mortgage. Bankrupt failed to dispose of any part of the $80,000 bond issue. Later bankruptcy proceedings were instituted and an adjudication followed.

Carroll J. Lord, of Chicago, Ill., for appellant.
Frank Schoenfeld, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). Priority is sought on the theory of subrogation. Having paid $3,384 on the first valid and subsisting mortgage, appellant urges equitable considerations in support of his claim for a lien. He invokes the doctrine of conventional rather than legal subrogation, and disclaims all rights under and by virtue of the trust deed given to secure the $80,000 bond issue.

[1, 2] That appellant could have protected his advance cannot be questioned. That he failed to do so, however, is, we think, equally apparent. Instead of taking an assignment of the first mortgage bonds and interest coupons, or agreeing with the creditor that he should have a lien similar to the lien of the holders of the bonds that were canceled, he accepted, for his security, a much larger amount of the bonds represented by the new $80,000 issue. His failure to record this trust deed, thus defeating the lien which a recordation thereof would have given, leaves him, in view of the bankruptcy act, in the position of an unsecured creditor.

Conventional subrogation must rest upon an agreement, express or implied, and this agreement must be to the effect that the payor shall have the same priority as the holder of the security and be substituted for him. Sheldon on Subrogation (2d Ed.) § 248; 37 Cyc. 469, 470; Murphy v. Baldwin, 159 Wis. 567, 571, 150 N. W. 957; 25 R. C. L. p. 1342. Generally speaking, the payor is not entitled to subrogation, if he accepts other and different security.

The evidence in this record convinces us that Henning was not to have a lien similar or equal to that of the creditors whose bonds he satisfied, nor was there any agreement or understanding between him and bankrupt that he was to have the security of a first mortgage. He accepted bonds of the face value of $29,000, secured by a second mortgage, to secure his $3,384 loan. These bonds, as well as the entire issue of which they were a part, were executed on the hypothesis of a complete satisfaction and discharge of the bonds and interest coupons paid by his loan. In other words, instead of an agreement whereby Henning was to be subrogated to the rights of the then existing lien holders, the evidence establishes another and different agreement as to security, the terms of which negative the existence of any agreement for subrogation. Instead of supporting, the agreement of the parties actually defeats, any claim of subrogation; for to accept twenty-nine eightieths of a new bond issue, secured by a second mortgage, instead of a lien of approximately three fifty-fourths of the first mortgage, is necessarily fatal to appellant's asserted lien based on conventional subrogation.

The decree is affirmed.